IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
      Plaintiff,

v.                               Case No. 14-10137-JTM

JONEARL SMITH,
      Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on defendant JonEarl Smith's Motion for Appeal Bond Pending Immediate Release Pursuant to Ruling on 28 U.S.C. § 2255 (Dkt. 53). Smith was charged by Indictment on July 23, 2014 with one count of possession of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c) and two counts of possession of a firearm by a prohibited person in violation of 18 U.S.C § 922(g). On October 6, 2014, the United States filed an Information (Dkt. 17) charging defendant with a single count of brandishing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). On that same date, defendant entered a waiver of indictment (Dkt. 18) along with a Petition to Enter Plea of Guilty and Order Entering Plea (Dkt. 19) and a Plea Agreement (Dkt. 21). Smith was sentenced on March 2, 2015 pursuant to the terms of the plea agreement to a term of 120 months imprisonment on count 1 of the Information, followed by 5 years of supervised release. (Dkt. 28, 29).

Smith subsequently filed a Motion to Vacate his sentence under 28 U.S.C. § 2255, arguing that his conviction of brandishing a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c) is either constitutionally invalid or invalid due to his

"actual innocence," and that his guilty plea is invalid due to ineffective assistance of counsel. He has since filed a number of supplements to his motion, which remain pending before the court. (*See* Dkts. 38, 39, 41, 42, 52). The United States opposes the Motion to Vacate. (*See* Dkt. 51). Smith requests that the court release him from custody pending its decision on the Motion to Vacate due to threat of infection with Covid-19 and Smith's family circumstances.

**Analysis**

A federal court has the authority to release a prisoner on bond pending a decision on a petition for habeas relief. *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981) (citing *In re Wainright*, 518 F.2d 173, 174 (5th Cir. 1975)). In order to justify release, a prisoner must show either "exceptional circumstances" or "a demonstration of a clear case on the merits of the habeas petition." *Id.* (citations omitted); *see also Barnett v. Hargett*, 166 F.3d 1220, 1220 (10th Cir. 1999) ("To warrant release pending review of a petition for writ of habeas corpus, a defendant must demonstrate special circumstances or a high probability of success."). A petitioner's belief that he will prevail on appeal is not a special or extraordinary circumstance justifying release. *Barnett v. Hargett*, 166 F.3d at 1220 (citing *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989)). Instead, special circumstances justifying release "include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated and an unusual delay in the appeal process." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989).

This court has recognized that "[t]he standard for granting such relief is high." *Johnson v. Nelson*, 877 F. Supp. 569, 570 (D. Kan. 1995) (noting a higher standard for a habeas petitioner than for an applicant seeking a writ attacking incarceration prior to a judicial determination of guilt). Further, even if a defendant is able to show likelihood of success or exceptional circumstances, the court must consider whether release is warranted by the circumstances in his particular case. *See Johnson*, 877 F.Supp. at 570-71 (citing with approval *Stepney v. Lopez*, 597 F.Supp. 11 (D. Conn. 1984), in which the court declined to grant release pending habeas proceedings even in light of "significant human considerations based on petitioner's health" where the court "found more compelling offsetting factors such as the petitioner's conviction of a major crime, presentation of legal claims that were not extraordinary in their weight or merit, and no clear suggestion of any constitutional deprivation during the petitioner's trial.").

Smith has not shown such exceptional or extraordinary circumstances or likelihood of success on his claims to justify release pending this court's decision on his Motion to Vacate. Smith was convicted pursuant to his guilty plea of brandishing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). Count 1 of the Information (Dkt. 17), to which Smith pled guilty, alleged that on or about July 12, 2014, defendant knowingly possessed a firearm "in furtherance of a crime of violence for which the defendant may be prosecuted in a court of the United States, and the defendant brandished the firearm(s), in violation of Title 18, United States Code, Section 924(c)(1)." Smith's binding plea agreement with the United States was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C). In exchange for Smith's plea, the government agreed to dismiss

counts 2 and 3 of the original Indictment, not to charge any additional offenses related to the conduct giving rise to the original Indictment, and to recommend the 120-month sentence Smith received. (*See* Dkt. 21; Dkt. 22, para. 11). Smith's Petition to Enter Guilty Plea (Dkt. 19) contained the following statement:

> I represent to the Court that I did the following acts in connection with the charges made against me in Count 1 of the Information, to wit: On or about July 12, 2014, in the District of Kansas, I did knowingly brandish a firearm … in furtherance of a crime of violence for which the defendant may be prosecuted in a court of the United States, in violation of 18 U.S.C. § 924(c).

(Dkt. 19, para. 5). In addition, the Plea Agreement spelled out the conduct that originally gave rise to the Indictment:

> On July 12, 2014, the defendant, JonEarl Smith was driving a car that was involved in a shooting incident in Wichita, Kansas. The defendant admits that he drove his car and brandished a firearm at others, who were later identified as gang members.
> The defendant admits that he was eventually stopped in the car by the Wichita Police Department. Two guns were found in the defendant's car in the front passenger floorboard. One of these two guns was the gun brandished by the defendant, while the second firearm was pointed at the gang members during the shooting incident.
> …. The defendant further admits that he knew the guns were in his car, and that he knowingly engaged in these actions.
> The defendant would advise the Court that he understands the act of brandishing the gun(s) at other people, constituted a crime of violence for which the defendant could be prosecuted in a court of the United States. In addition, the defendant would advise the court that he has reviewed the evidence in the case and learned that the two previously mentioned guns are firearms as defined in Title 18, United States Code, Section 921(a)(3).

 (Dkt. 21, at 2).

Smith contends that notwithstanding the guilty plea, his § 924(c) conviction was invalid because there was no "predicate crime of violence" for which he was charged or convicted; that "brandishing" itself cannot be the predicate crime of violence; and that

the Supreme Court's decision in *United States v. Davis* invalidates his conviction. In *Davis*, the Court found the "residual" clause of 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague. *United States v. Davis*, 139 S.Ct. 2139, 2336 (2019). Post-*Davis*, an offense must be a felony having as an element "the use, attempted use, or threatened use of physical force against the person or property of another" in order to qualify as a "crime of violence" under § 924(c)(1). 18 U.S.C. § 924(c)(3)(A).

Smith contends that the United States must have been relying upon the "brandishing" to establish a crime of violence, rather than a separate and distinct criminal offense because no other crimes were charged in the initial Indictment other than the § 924(c) count and two counts of possession of a firearm by a prohibited person under § 922(g). But, "a conviction under § 924(c) does not require a conviction of the crime of violence as a predicate offense." *United States v. Haywood*, 363 F.3d 200, 211 (3d Cir. 2004) (citing *United States v. Lake*, 150 F.3d at 275). "A valid § 924(c) conviction 'requires only that the defendant have committed a violent crime *for which he may be prosecuted* in federal court. It does not even require that the crime be charged; *a fortiori*, it does not require that he be convicted.'" *Id.* (quoting *United States v. Smith*, 182 F.3d 452, 457 (6th Cir. 1999)) (emphasis in original). It is immaterial whether Smith was actually charged with or convicted of a separate crime of violence, so long as the evidence demonstrates that Smith committed a violent crime for which he *may* have been prosecuted in federal court. *See United States v. Gregg*, 2005 DSD 12, ¶¶ 6-7 (D.S.D. July 7, 2005) (collecting cases).

Even though Smith was neither charged with nor convicted of a separate crime of violence, his admissions in the Plea Agreement and Petition to Enter Guilty Plea establish

that he was involved in conduct at the time of the offense in question that constituted a felony for which he could have been charged in federal court. Moreover, that conduct carried with it as an element the use, attempted use, or threatened use of physical force against another person such that it qualified as a crime of violence under § 924(c)(3)(A)'s elements clause, rather than the now-invalid residual clause of § 924(c)(3)(B). *See United States v. Lake*, 150 F.3d 269, 274-75 (3d Cir. 1998) ("In a prosecution under [§ 924(c)] the government must prove that the defendant committed a qualifying predicate offense … but it is not necessary that the defendant be separately charged with or convicted of such and offense." (citation omitted)). The court consequently finds that on the face of his pleadings, Smith is unlikely to prevail on his claims that his § 924(c) conviction is constitutionally or otherwise invalid.

The court also finds on the face of the pleadings that Smith is unlikely to prevail on his arguments that the plea agreement is invalid due to actual innocence or ineffective assistance of counsel. Smith contends that because his § 924(c) conviction is constitutionally invalid, it renders him legally innocent. While "legal innocence" can be a basis for withdrawing a plea (*see United States v. Harper*, 934 F.3d 524, 528 (7th Cir. 2019)), the court finds Smith unlikely to establish legal innocence of the § 924(c) charges for the reasons set forth above.

To determine whether counsel's performance was so defective to require reversal of a conviction, Smith must show that counsel's performance was "deficient," and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 686-88, 104 S.Ct. 2052 (1984). "Deficiency" in this sense means that counsel's

representation "fell below an objective standard of reasonableness." *Padilla v. Kentucky*, 599 U.S. 356, 366 (2010) (citing *Strickland*, 466 U.S. at 688); *see also Strickland*, 466 U.S. at 687 ("a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.'") (quoting *McMann v. Richardson*, 397 U.S., at 770, 771, 90 S.Ct., at 1448, 1449). Judicial review of counsel's performance must be "highly deferential," and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles v. Mirzavance*, 556 U.S. 111, 123-24 (2009) (quoting *Strickland*, 466 U.S. at 689).

Smith is unlikely to overcome this extremely deferential standard. Smith contends that his counsel did not inform him that a predicate offense was required in order for Smith to be convicted under § 924(c), but, as discussed above, Smith's arguments rely on an erroneous interpretation of the law. Smith did not need to be charged with or convicted of a separate "qualifying crime of violence" in order to be found guilty of a violation of § 924(c), so long as the court found that Smith's conduct in committing the offense constituted a felony for which Smith could have been charged in federal court. Smith admitted to such conduct in his plea. Even if counsel has mis-advised Smith on that point, the court finds it unlikely that Smith can show that advice was prejudicial to his defense. The initial Indictment charged three crimes related to possession or use of a firearm. Smith's potential sentence on those charges ranged from 262 to 327 months on the § 924(c) charge and fifteen years to life on the two § 922(g) charges. Smith's counsel was able to negotiate a plea that resulted in dismissal of two out of three charges and a

below-guidelines sentence of 120 months, along with a concession by the United States not to add any charges arising from the underlying conduct. The court finds it unlikely that Smith could prove the results of the proceedings would have come out more favorably for Smith had he rejected the plea and gone to trial. *See Knowles v. Mirzavance*, 556 U.S. 111, 126-28 (2009) ("to establish prejudice, the defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") (citations and quotation marks omitted).

Because the court cannot conclude that Smith has established a particularly high likelihood of success on the merits of his motion to vacate, the court must determine whether an appeal bond is otherwise warranted by exceptional circumstances. Smith states that he is 41 years of age, suffers from asthma and hay fever, and is at a greater risk of life-threatening complications if he is infected with Covid-19 because of his age and medical conditions. He argues that staff at his correctional institution have already tested positive for Covid-19 and that the virus is likely to spread rapidly through the facility. He also indicates that since his incarceration his father and grandmother have passed away, leaving behind an elderly mother and an uncle with dementia for whom he could provide care.

Smith's concerns about infection with Covid-19, while understandable, do not rise to the level of extraordinary or exceptional circumstances that would justify an appeal bond. Smith's request for an appeal bond does not arise under the compassionate release provisions of 18 U.S.C. § 3582(c); nevertheless, the court finds decisions with respect to §

3582(c) in the wake of Covid-19 are instructive. Courts considering compassionate release, including this court, have concluded "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (citing Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09PM), https://www.bop.gov/resources/news/202000313_covid19.jsp). *See also United States v. Eberhart*, 13-CR-00313-PJH-1, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")*; United States v. Seymon*, 11-CR-10040-JES, 2020 WL 2468762 at *4 (C.D. Ill. May 13, 2020) ("The Court does not seek to minimize the risks that COVID-19 poses to inmates in the BOP …. But the mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release."); *United States v. Machuca-Quintana,* No. 19-10001-JTM, Dkt. 52 (D. Kan. June 8, 2020) (declining to grant compassionate release on grounds of Covid-19 concerns).

The court likewise declines to find that Covid-19 creates extraordinary and compelling reasons justifying an appeal bond in this matter, particularly in light of Smith's relatively young age, the Bureau of Prison's efforts to control and address the spread of Covid-19 within its facilities, and Smith's failure to show that he cannot provide

adequate self-care or receive adequate medical care within the correctional environment even if he is infected with Covid-19.

Smith's request to care for elderly or infirm relatives similarly fails to justify an appeal bond. Again, although Smith's motion is not made pursuant to § 3582(c), the court finds the policy guidelines applicable to that statute to be instructive on family circumstances that would warrant early release from custody. Application Note 1(C) to U.S.S.G. § 1B1.13 indicates that "family circumstances" can provide extraordinary and compelling reasons to reduce a sentence based upon the death or incapacitation of the caregiver of defendant's minor children, or the incapacitation of the defendant's spouse or partner if the defendant is the only available caregiver for that individual. Care for an elderly parent or uncle is not contemplated by this provision. Smith contends that he could provide care for his elderly mother and his uncle with dementia, but does not contend that other care is unavailable for these individuals or that irreparable harm would otherwise result to these individuals if Smith was not released from custody to care for them.

Finally, the court finds that a balance of all applicable circumstances in this matter does not favor Smith's release pending resolution of his § 2255 motion. Like other courts that have considered similar cases, the court finds that Smith is serving a sentence on a serious offense which is presumed to be valid, his claims of constitutional deprivations are not likely to succeed on their merits, and Smith has access to sufficient medical treatment within the correctional environment to adequately address his health concerns. *See Johnson*, 877 F.Supp. at 570-71.

Smith's motion for an appeal bond is DENIED.

IT IS SO ORDERED this 18th day of June, 2020.

/s/J. Thomas Marten
THE HONORABLE J. THOMAS MARTEN
UNITED STATES DISTRICT COURT